*Edward L. Sattler, Ph.D.*

Office: (309) 677-2995
Fax: (309) 677-3374
Home: (309) 383-4059

**ECONOMIC**

**CONSULTANT**

Department of Economics
Bradley University
Peoria, IL  61625

August 30, 2006

Mr. Tony L. Brasel
201 Park Place
Suite 12
Bourbonnais, IL   60914

Dear Mr. Brasel:

I have reviewed the economic opinion delivered in the Santillan v. Schaafsma by Dr. Stan Smith.  In my 26 years working as a forensic economist this opinion is notable for its lack of  scientific and forensic support.

I agree with Dr. Smith on his 2% real net discount rate and his household service contribution seems to be reasonable.  His wage loss calculation is bizarre by taking Mr. Santillan his age of death at age 82 when the worklife tables suggest fours years of worklife; or to age 69 or less.

Dr. Smith's hedonic value of life calculations and value of relationship and advice and counsel calculations are so unreasonable that I have addressed specific sections to each.

Dr. Smith uses the value of $35,157 per year as the wage loss figure.  If Mr. Santillan was working full-time at the time of his death, his worklife is only 4.15 years beyond his age at death of 65.5.  If he was not actively working; then his worklife is only 1.25 years.  Dr. Smith totally ignores these worklife tables that are consistently used in forensic economics.  This results in a gross overstatement of the present cash value of economic loss in wages.

The advice and counsel; relationship; and value of life calculations are not commonly accepted by the economics community. Dr. Smith's two citations from the Journal of Forensic Economics are somewhat misrepresented by him and form a decidedly minority view by forensic economists.  In the most recent survey of forensic economists in the Litigation Economics Review (vol 6 #2 Summer 2004), 82% of the forensic economists responded that they would not be willing to calculate hedonic damages if asked by a plaintiff's attorney (p 35) and 72% said they would be willing to critique and

Exhibit A

economist's report as to hedonic damages (p36).

LOSS OF GUIDANCE; ACCOMPANIEMENT; AND RELATIONSHIP

Dr. Smith calculates values for loss of guidance, loss of accompaniment, and loss of relationship. In my 26 years of practicing as a forensic economist I have never seen any other economist present such calculations. The calculations are solely based on one article in one journal. An article entitled "Household Services: Toward a More Comprehensive Measure" by Frank Tinari in the Journal of Forensic Economics 11(3), 1998, p. 253-265 presents an arguments for measuring advice, guidance, counseling and companionship services as an addition to the usual household services calculations.

Household service calculations such as cleaning, shopping, cooking, home repair, and maintenance have been measured in studies and valued at replacement costs. Typically the beneficiaries of these services are spouses and children under the age of majority.

Dr. Smith's approach not only significantly expands the activities that are valued but he assigns them to her brothers (not her children) beyond the age of majority; a significant departure from household service calculations. Guidance, advice, counseling, and companionship all may well have value but without studies and a literature to back them up would be pure speculation by an economist.

The conclusion of the article contains significant qualifiers to using the content of the article for actual case calculations. For instance:

"This paper does not purport to give definitive values to the losses of companionship services and advice, counsel, and guidance services. Rather it presents an argument for their inclusion in a more comprehensive measure of household services…." The estimated values are suggestions based on "reasonable assumptions" (my quotes) regarding both the types of services provided by family members to one another and the quantity of time devoted to them. The analyst in any given case, however, must take steps to develop reasonable estimates of the quantity of hours of these services such as have been demonstrated in this paper."

Dr. Smith also cites a paper in the Journal of Forensic Economics authored by Chestnut and Violette entitled "The Relevance of Willingness-to-pay Estimates of the Value of a Statistical Life in Determining Wrongful Death Awards" in support of his loss of society or relationship calculations. In fact, that article strongly cautions against the use of willingness-to-pay calculations in value of life and related measures. They are particularly concerned with the stability of a statistical life estimate in different circumstances and the large amount of variation in statistical life estimates.

Both the quantity of daily and annual hours estimated by Dr. Smith for losses in guidance, companionship, and counseling seem to be totally unrealistic, especially given the lack of scientific studies supporting such estimates. Further, to value the hours at professional rates also produces a significant upward bias.

In summary, Dr. Smith's calculations for lost companionship, guidance, and counseling are without sufficient scientific basis, not generally accepted in the discipline, and purely speculative. There may well be value to these activities but the court or the jurors are just as competent to assign values as is Dr. Smith.

HEDONIC VALUE OF LIFE CALCULATIONS

Dr. Simth advances a Hedonic damages component to his economic loss calculation. Dr. Smith uses the willingness-to-pay approach to estimate the value of a statistical life. These values can be calculated through consumption activities or wage differentials based on small probabilities of risk.

As an example, if one buys a smoke detector for $10 resulting in a .00001 reduction in the probability of death, then one divides $10 by .00001 the estimated value of a statistical life is $1,000,000. This type of methodology has been used in cost benefit analysis particularly in government to determine whether projects might be viable. The value calculated is a statistical value of a nameless, faceless member of society. The values produced by this methodology range from $888,000 to $10,351,000. This extremely wide range of damages characterizes the flawed methodology in the calculations.

In fact, these numbers, at their best, represent a value of insurance but not the value of human life. This wide range of values is the result of a methodology based on a number of questionable assumptions. Those assumptions include (1)people actually have freedom of choice in deciding to confront risk (2)people perceive exceptionally small risk accurately (3)a disregard of non monetary factors that drive consumer purchases such as advertising and (4)income of the person has no impact on the purchase, when we recognize in economics the income effects do affect purchases.

Clearly there is some value that represents a reduced ability to enjoy life, loss of a beloved companion, pain and suffering, or grief and bereavement. Economic theory is not capable of measuring these basic human emotions. Economic theory cannot reliably attach dollar figures to such losses.

It is the lack of direct market equivalents for human intangibles that prevents economists from providing meaningful measures of the values of human intangibles. Work lives and work histories can be observed as can earnings and fringe benefit packages. Further,

values can be assigned to household contributions or medical treatment because these variables can be directly measured with market equivalents.

If one were to accept this flawed willingness-to-pay methodology as an acceptable technique for valuing human life, a further problem is that the value produced attaches to a faceless statistical person and is not case-specific.

Dr. Smith's Value of Life methodology reflects a flawed analysis, not only from the standpoint of common sense, but also from the standpoint of economic theory. I teach intermediate and graduate micro economic theory. One point that is made in my course is that individual tastes and emotions are difficult to compare between individuals and even more difficult to measure. To state that everyone is identical seems strange on the face of it.

Dr. Stan Smith is one of a very few forensic economists who seriously advocates this methodology. The last I knew, Dr. Smith did not have any full-time academic appointment.

Dr. Kip Viscusi is a professor of law and economics at Harvard University Law School. The following quotes from professor Viscusi reflect his feelings about the willingness-to-pay methodology.

Journal of Forensic Economics 13(2) 2000 pp. 111-125. *Misuses and Proper uses of Hedonic Values of Life in Legal Contexts* The following quotes are taken from a section entitled "Why Hedonic Damages are Not Warranted"…pp. 116-121.

"*The real problem is that there is a mismatch between the underlying theory for the value of life and the use of this measure as a compensation mechanism. Consumers don't want this much insurance compensation except when dealing with people's rate of tradeoff involving small risks. The methodology also does not provide a measure of appropriate insurance, i.e., the value of the amount the person would want to be compensated after a fatality. Unfortunately, this is the way in which some courts have been using the hedonic value-of-life estimates.*"

"*… When the government uses value-of-life estimates it is for the purposes of benefit assessment (in cost benefit analysis). It is noteworthy that the government does not use these values for purposes of compensation even in situations analogous to cases involving wrongful death.*"

Dr. Thomas Havrilesky (Professor of Economics; Department of Economics; Duke University) states the following in the Journal of Forensic Economics 8(1), 1995, ;; 49-54 in an article entitled: *The Persistent Misapplication of the "Hedonic Damages" Concept to Wrongful Death and Personal Injury Litigation*

"*Forensic economists realize that the unfortunate phrase*

*"hedonic damages" is not usually understood by economists with no experience in litigation. Many economists without an interest in forensic applications would likely be aware of "the value of life" as it relates to the literature on the valuation of the avoidance of the risk in cost-benefit analysis as developed by Mishan, Schelling, and Viscusi. Nevertheless, they would not generally know of the attempt by a small number of forensic economists to apply these risk-based, anonymous-life values to an individual's enjoyment of his or her whole life. The reason for this is that there is no literature on this particular application beyond the forensic and law journals."*

*"As to the "body of scientific knowledge", consider the views of the leading researchers in hedonic valuation. Thomas Schelling was one of the initiators of the value-of-life research. He was invited to speak for the profession by writing a section about it in the New Pagrave Dictionary on Economics. In that section Schelling indicates that risk reduction and value of the enjoyment of life are different and that the former does not measure the latter. Eraz Mishan was another pioneer in this area. He warned that values for changes in risk not be misinterpreted as values of enjoyment of whole human lives. The leading contemporaneous researcher in the area of risk reduction is W. Kip Viscusi. On numerous occasions he has testified against the same misinterpretation as has another important current-day researcher, Lauraine Chesnut."*

A number of articles in the Journal of Forensic Economics issue of Spring/Summer 2000 entitled "Hedonic Damages Ten Years Later" are strongly critical of Hedonic damage calculations as cited by Dr. Smith. Case law as argued in Ayers v. Robinson et al. (887 F. Supp. 1049) further supports the lack of support for Dr. Smith's Hedonic calculations.

Sincerely,

Edward L. Sattler, Ph.D.
Professor of Economics
Bradley University