E-FILED
Monday, 09 October, 2006  03:18:42 PM
Clerk, U.S. District Court, ILCD

AN APPRAISAL OF ECONOMIC LOSS
RESULTING FROM THE DEATH OF
MARY P. COSKCO

Frank D. Tinari, Ph.D.

TINARI ECONOMICS
220 South Orange Avenue
Suite 203
Livingston, NJ 07039
973 / 992-1800  phone
973 / 992-0023  fax

January 11, 2002

# TABLE OF CONTENTS

Certification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Purpose of Appraisal . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Opinion of Economic Damages . . . . . . . . . . . . . . . . . . . .  2

Background Facts and Assumptions . . . . . . . . . . . . . . . .  3

Components of Loss . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

Household Services . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

Companionship Services to Spouse . . . . . . . . . . . . . . . .  9

Companionship Services to Children . . . . . . . . . . . . . .  12

Advice and Counsel Services to Spouse . . . . . . . . . . . .  14

Advice and Counsel Services to Children . . . . . . . . . . .  18

Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

Appendix of Tables

Qualifications Profile

Statement of Ethical Principles

Statement of Disclosure

### Certification

This is to certify that I am not related to any of the parties to subject action, nor do I have any present or intended financial interest in this case beyond the fees due for professional services rendered in connection with this report and possible subsequent services. Further, I certify that my professional fees are not contingent fees but are based on the time expended on the services provided to counsel in connection with subject action.

This is to further certify that all assumptions, methodologies, and calculations utilized in This appraisal report are based on current knowledge and methods applied in the determination of projected pecuniary losses.

In addition, this is to further certify that I pledge to abide by the spirit and the letter of the Statement of Ethical Principles of the National Association of Forensic Economics, and the Statement of Disclosure of the American Academy of Economic and Financial Experts, copies of which are attached to this report.


Frank D. Tinari, Ph.D.

## Purpose of Appraisal

Counsel requested us to prepare a report appraising the value of economic damages as a result of the death of Mary Coskco.  Background facts regarding the decedent and her family were provided in documents pursuant to this matter.  These facts as well as additional information gathered from various published documents and utilized in developing this appraisal are fully referenced at the point of use in this report.

The purpose of this report, therefore, is <u>to provide a written appraisal of economic losses in the case of Mary Coskco.</u>

## Opinion of Economic Damages

Within a reasonable degree of economic certainty, and based on the analysis contained in this report, it is our professional opinion that the total present value of the projected losses resulting from the death of Mary Coskco amounts to

**ONE MILLION,
EIGHT  HUNDRED THIRTY-ONE THOUSAND,
SEVEN HUNDRED FIVE DOLLARS**

**[ $1,831,705 ]**

This amount does not take into account the ramifications of intangible, non-economic losses such as human suffering, love, emotional feelings, or consortium that may have been suffered by family members.

## Background Facts and Assumptions

| | |
|---|---|
| 1) Decedent: | Mary P. Coskco; white female |
| 2) Date of birth: | September 9, 1963 |
| 3) Date of death: | April 6, 2000 |
| 4) Residence: | xxxxxxxx, New Jersey |
| 5) Education level: | high school diploma |
| 6) Prior health: | good |
| 7) Occupation: | homemaker |
| 8) Spouse: | Anthony      (dob: 9/04/62) |
| 9) Children: | Elizabeth    (dob: 3/29/91) |
| | Lindsay      (dob: 6/14/93) |
| | Zachary      (dob: 7/04/97) |

10) Life expectancy at date of death: females of Mrs. Coskco's age (36.57 years) live, on average, an additional 40.49 years. [SOURCE: *Rules Governing the Courts of the State of New Jersey*, 2001 Edition, Appendix I.] Therefore, persons in Mrs. Coskco's statistical cohort live to an average age of 77.06 years, implying a statistical date of death of October 1, 2040.

11) Life expectancy of spouse: as of the date of his wife's death, males of Mr. Coskco's age (37.84 years) live, on average, an additional 39.56 years. [SOURCE: *ibid.*] Therefore, persons in his statistical cohort have an expected total life span averaging 77.40 years, implying a statistical date of death of October 28, 2039. Because Mr. Coskco would have pre-deceased his wife, statistically, we calculate losses to him until his statistical date of death.

12) Statistical retirement age: males of Mr. Coskco's age (37.84 years) and level of education (high school) have 23.76 years to retirement. [SOURCE: Tamorah Hunt, Joyce Pickersgill and Herbert Rutemiller, "Median Years To Retirement and Work Life Expectancy for the Civilian U.S. Population" (Prepared Using 1992/93 BLS Labor Force Participation Rates), *Journal of Forensic Economics*, 10(2), 1997, pp. 171-205, Appendix A - Table 4, by interpolation.] This implies a statistical retirement age of 61.60 years on January 9, 2024.

13) Household services: decedent reportedly handled all of the family financial matters and household chores such as grocery shopping and preparation of meals. [SOURCE: Fact-Finding List.]

14) Relationship with spouse: Mr. and Mrs. Coskco enjoyed vacationing and spending time with each other watching television or shopping. Mr. Coskco, a firefighter, states that

they spent almost all of their free time together. [SOURCE: *ibid*.] Therefore, we project lost companionship hours on an assumption of twenty-five (25) hours per week until his retirement.

15) Decedent's relationship with her children: Mrs. Coskco had a very close relationship with her three children, Elizabeth, Lindsay and Zachary. Prior to her death, decedent spent much of her time with the children. Mrs. Coskco transported her two older children to and from extra-curricular activities, assisted them with their studies and was active in the school PTA. She also provided much of the daily care and supervision for their youngest child, Zachary. [SOURCE: *ibid*.] It is assumed that Mrs. Coskco would have continued to provide her children with guidance and advise as they grew older.

## Components of Loss

The pecuniary value of loss resulting from the death of Mrs. Coskco is estimated by consideration of the following components of loss:

1. household services
2. companionship services to spouse
3. companionship services to children
4. advice and counsel services to spouse
5. advice and counsel services to children

Each of these losses is estimated separately in the following sections of this appraisal report.

## Loss of Household Services

The death of a mother and wife deprives remaining family members of the physical household services she had been providing for them. The pecuniary value of such services is calculated on the basis of both the quantity of hours of household services and a reasonable market wage rate for such services:

> When household services are turned over to someone else to produce, they have a money value -- the value of the time spent by the worker. The same services are just as valuable when provided by a family member. Consequently, a money value can be given to the services of providing the



food, clothing, housing and nurture of the family by valuing family time
spent on household work at going wage rates that would be paid to others
for the same services. [SOURCE: William H. Gauger and Kathryn E.
Walker, *The Dollar Value of Household Work*. Ithaca, New York: Cornell
University Press, 1980, revised edition, page 3.]

Research has been conducted to determine the extent and value of household services
performed by various members of the family unit.  Services of a mother have been
documented to vary with the number and ages of children. We make use of a well-known
study to develop the following assumed hours of household services:

| Number of Children / Age of Youngest Child | Annual Hours |
|---|---|
| 3 / <6 | 1,862 |
| 2 / 6-11 | 1,613 |
| 2 / >11 | 1,391 |
| 1 / >11 | 1,245 |
| no dependent children | 560 |

[SOURCE: David H. Ciscel and David C. Sharp, "Household Labor in Hours by Family
Type," *Journal of Forensic Economics*, 8(2), 1995, page 117, Table 1.] [SOURCE: David
H. Ciscel and David C. Sharp, "Household Labor in Hours by Family Type," *Journal of
Forensic Economics*, 8(2), 1995, page 117, Table 1.]

However, with advancement in years, physical strength naturally diminishes.  As people
age, the probability of their being able to perform all of the household chores which were
once done also diminishes.  The elderly are more prone to slips, falls and various disabling
illnesses.  Statistical research provides data on the probability of such disabling
occurrences.

Thus, we reduce the annual hours of household support by 11.3% between the ages of
sixty-five (65) and seventy-four (74) and by 30.7% after age seventy-five (75) to account
for the probability of decedent becoming disabled over her remaining statistical life
expectancy. [SOURCE: U.S. Department of Commerce, Current Population Reports,
*Disability, Functional, Limitation, and Health Insurance Coverage: 1984/85,* Household
Economic Studies, Series P-70, No. 8, Table G, p. 8.]

The table below details the assumed hours of household services, based on the dates of
birth of decedent's children and the hours of service outlined above.

| Time Period | Annual Hours of Service |
|---|---|
| July 4, 1997 - March 28, 2009 | 1,862 |
| March 29, 2009 - July 3, 2009 | 1,613 |
| July 4, 2009 - June 13, 2011 | 1,391 |
| June 14, 2011 - July 3, 2015 | 1,245 |
| July 4, 2015 - September 8, 2028 | 560 |
| September 9, 2028 - September 8, 2038 | 497 |
| September 9, 2038 - October 28, 2039 | 388 |

Turning to the monetary value of these services, average hourly earnings of nonsupervisory workers in the Services industry sector were $13.36 in 1999 and $13.88 in 2000. [SOURCE: U.S. Department of Labor, Bureau of Labor Statistics, *Monthly Labor Review*, April 2001.] To obtain corresponding values for 2001 and 2002, we apply an annual growth rate of 3.9%, which is the growth rate exhibited by the data between 1999 and 2000. This yields wage rates of $14.42 for 2001 and $14.98 for 2002.

The loss of household services begins with Mrs. Coskco's date of death, April 6, 2000, and extends until Mr. Coskco's statistical date of death, a time period of 39.56 years. Calculations of loss are divided into past years through the end of January 2002, and future years subsequent to that date. Furthermore, to calculate the pecuniary value of the loss of household services for those years subsequent to the end of January 2002, a growth rate of 4.5% per annum is applied. [SOURCES:   Selected Economic Assumptions by Alternative Calendar Years 1960-2075, *2000 Annual Report of the Board of Trustees of the Federal Old-Age and Survivors Insurance and Disability Insurance Trust Funds*, April 30, 1999, Table II.D1, and Average Hourly Earnings of Production or Nonsupervisory Workers on Private Nonagricultural Payrolls by Industry, 1959-1999, *Economic Report of the President, 2000,* p. 360.]

The value of Mrs. Coskco's household services through the present time is derived as follows:

| Time Period | Annual Loss |
|---|---|
| 2000.27 | $      6,978 |
| 2001 | 26,850 |
| 2002.08 | 2,231 |
| total: | $36,059 |

Losses in future years are calculated beginning February 1, 2002, and extend for a remaining time period of 37.75 years, until Mr. Coskco's statistical date of death on October 28, 2039. As stated earlier, an assumed growth rate of 4.5% per annum is used to generate values in each subsequent year.

Regarding future projected losses, it is possible to set aside a lump-sum monetary amount at the present time such that the annual flow of interest earnings from it plus a part of the principal would generate the equivalent amount of lost financial sums projected for each successive year under consideration. In other words, money has a time value. Pecuniary losses expected to be suffered at some future point in time are worth less in today's dollars because money can earn additional monies in the form of interest. Thus, to calculate the present value of the required lump sum amount, it is necessary to establish a reasonable discount rate factor.

The tax-free return on Aaa municipal bonds serves as the basis of our discount rate. Over the past five (5) years, interest rate associated with Aaa municipal bonds of varying maturities has averaged 5.56%. Over the past 10 and 20 years, interest rates associated with Aaa municipal bonds of varying maturities have averaged 6.02% and 7.52%, respectively. [SOURCES: Thomas Ireland, "Historical Comparisons Between Various Interest Rates and Growth Rates in the CPI, MCPI, Average Weekly Earnings and Total Compensation in the Employer Cost Index", *Journal of Legal Economics,* Revised Volume 10, Number 1 Spring/Summer 2000, Table 2, pp. 30-31.] In light of historical municipal bond returns and current financial market trends, we select 6% as the appropriate discount rate.

When the growth and discount rates are applied to the annual value of household services in 2002 dollars, the present value of future losses is calculated as follows:

(See table on following page)

KLOCKO / Chasan Leyner Bariso & Lamparello                    page   8

| Time Period | Annual Hours of Services | Annual Value [@ 4.5%] | Present Value [@ 6.0%] |
|---|---|---|---|
| (1) | (2) | (3) | (4) |
| 2002.92 | 1,713 | $25,661 | $25,661 |
| 2003 | 1,862 | 29,148 | 27,498 |
| 2004 | 1,862 | 30,460 | 27,109 |
| 2005 | 1,862 | 31,830 | 26,725 |
| 2006 | 1,862 | 33,263 | 26,347 |
| 2007 | 1,862 | 34,759 | 25,974 |
| 2008 | 1,862 | 36,324 | 25,607 |
| 2009 | 1,564 | 31,888 | 21,921 |
| 2010 | 1,391 | 29,633 | 18,592 |
| 2011 | 1,311 | 29,178 | 17,271 |
| 2012 | 1,245 | 28,963 | 16,173 |
| 2013 | 1,245 | 30,266 | 15,944 |
| 2014 | 1,245 | 31,628 | 15,718 |
| 2015 | 903 | 23,959 | 11,233 |
| 2016 | 560 | 15,536 | 6,871 |
| 2017 | 560 | 16,235 | 6,774 |
| 2018 | 560 | 16,965 | 6,678 |
| 2019 | 560 | 17,729 | 6,584 |
| 2020 | 560 | 18,526 | 6,491 |
| 2021 | 560 | 19,360 | 6,399 |
| 2022 | 560 | 20,231 | 6,308 |
| 2023 | 560 | 21,142 | 6,219 |
| 2024 | 560 | 22,093 | 6,131 |
| 2025 | 560 | 23,087 | 6,044 |
| 2026 | 560 | 24,126 | 5,959 |
| 2027 | 560 | 25,212 | 5,874 |
| 2028 | 546 | 25,665 | 5,641 |
| 2029 | 497 | 24,435 | 5,067 |
| 2030 | 497 | 25,534 | 4,995 |
| 2031 | 497 | 26,683 | 4,925 |
| 2032 | 497 | 27,884 | 4,855 |
| 2033 | 497 | 29,139 | 4,786 |
| 2034 | 497 | 30,450 | 4,718 |
| 2035 | 497 | 31,820 | 4,652 |
| 2036 | 497 | 33,252 | 4,586 |
| 2037 | 497 | 34,749 | 4,521 |
| 2038 | 472 | 34,481 | 4,232 |
| 2039.83 | 322 | 25,503 | 3,130 |
| | | total: | $434,215 |



### Loss of Companionship Services to Spouse

Mr. Coskco has also suffered a loss of companionship services as a result of the death of his spouse. In this context, companionship is distinguished from consortium in that people are able to hire paid "companions", usually practical nurses or paid companions, from a nurses registry service for the purpose of having someone accompany them while shopping, help them obtain transportation, and generally be a companion to them. The legal basis for such a loss has been described by Chief Justice Robert Wilentz:

> Companionship, lost by death, to be compensable must be that which would have provided services substantially equivalent to those provided by the `companions' often hired today by the aged or infirm, or substantially equivalent to services provided by nurses or practical nurses. And its value must be confined to what the marketplace would pay a stranger with similar qualifications for performing such services. [SOURCE: Supreme Court of New Jersey, *Green v. Bittner*, 85 NJ 1 (1980), page 12.]

We evaluate this loss by considering the market cost of paid companions. In May 1998, we conducted a telephone survey of eighteen (18) registry services in central New Jersey which indicated an hourly rate averaging $16.39 per hour. For purposes of this study that rate is rounded to $16.50 per hour. The corresponding 1999 hourly rate is calculated by applying the annual percentage change in the cost of professional medical services retroactively and retrospectively. The hourly rate for years 2000, 2001 and 2002 is obtained by application of the 1999 annual percentage change. [SOURCE: U.S. Department of Labor, Bureau of Labor Statistics, Consumer Price Index (CPI-U), Services by other medical professionals, excluding physicians, dental services, and eye care.] The calculated rates are presented in the following table:

| Year | Hourly Rate |
|------|-------------|
| 1999 | $16.85 |
| 2000 | 17.20 |
| 2001 | 17.56 |
| 2002 | 17.93 |

Mr. Coskco is a professional firefighter who normally spends 48 consecutive hours per week on duty. He has stated that he had spent almost all of his free time with his wife. [SOURCE: Fact-Finding List.] Based upon an assumption of twenty-five hours per week of companionship with her spouse, from Mrs. Coskco's date of death, April 6, 2000, until Mr. Coskco's retirement on January 9, 2024 (age 61.6), the value of companionship services she would have provided is estimated at $448 (25 x $17.93) per week or $23,296 per annum, in 2002 dollars. On the assumption that she would have spent six (6) hours per

day with her spouse after his retirement, the value of companionship services she would have provided is estimated at $107 (6 x $17.93) per day or $39,055 per annum, in 2002 dollars.

The loss of the pecuniary value of the companionship services that would have been provided by Mrs. Coskco through the present time (end of January 2002) is calculated as follows:

| Time Period | Annual Loss |
|---|---|
| 2000.27 | $ 6,037 |
| 2001 | 22,828 |
| 2002.08 | 1,865 |
| total: | $30,730 |

Losses in future years are calculated beginning February 1, 2002, and extend through Mr. Coskco's statistical date of death, a remaining time period of 37.75 years. As stated earlier, an assumed growth rate of 4.5% per annum is used to generate values in each subsequent year. Again, for the period in question, a reasonable discount rate is 6.0 %. Based on the aforementioned assumptions, the present value of the future companionship services Mrs. Coskco would have provided to her spouse is calculated as shown in the table on the following page.

| Time Period | Annual Hours | Annual Value [@ 4.5%] | Present Value [@ 6.0%] |
|---|---|---|---|
| (1) | (2) | (3) | (4) |
| 2002.08 | 104 | $1,826 | $1,826 |
| 2003 | 1,300 | 24,358 | 22,979 |
| 2004 | 1,300 | 25,454 | 22,654 |
| 2005 | 1,300 | 26,599 | 22,333 |
| 2006 | 1,300 | 27,796 | 22,017 |
| 2007 | 1,300 | 29,047 | 21,706 |
| 2008 | 1,300 | 30,354 | 21,399 |
| 2009 | 1,300 | 31,720 | 21,096 |
| 2010 | 1,300 | 33,148 | 20,797 |
| 2011 | 1,300 | 34,639 | 20,503 |
| 2012 | 1,300 | 36,198 | 20,213 |
| 2013 | 1,300 | 37,827 | 19,927 |
| 2014 | 1,300 | 39,529 | 19,645 |
| 2015 | 1,300 | 41,308 | 19,367 |
| 2016 | 1,300 | 43,167 | 19,093 |
| 2017 | 1,300 | 45,109 | 18,823 |
| 2018 | 1,300 | 47,139 | 18,556 |
| 2019 | 1,300 | 49,261 | 18,294 |
| 2020 | 1,300 | 51,477 | 18,035 |
| 2021 | 1,300 | 53,794 | 17,780 |
| 2022 | 1,300 | 56,215 | 17,528 |
| 2023 | 1,300 | 58,744 | 17,280 |
| 2024 | 2,184 | 103,131 | 28,620 |
| 2025 | 2,184 | 107,772 | 28,215 |
| 2026 | 2,184 | 112,622 | 27,815 |
| 2027 | 2,184 | 117,690 | 27,422 |
| 2028 | 2,184 | 122,986 | 27,034 |
| 2029 | 2,184 | 128,521 | 26,651 |
| 2030 | 2,184 | 134,304 | 26,274 |
| 2031 | 2,184 | 140,348 | 25,902 |
| 2032 | 2,184 | 146,663 | 25,536 |
| 2033 | 2,184 | 153,263 | 25,174 |
| 2034 | 2,184 | 160,160 | 24,818 |
| 2035 | 2,184 | 167,367 | 24,467 |
| 2036 | 2,184 | 174,899 | 24,121 |
| 2037 | 2,184 | 182,769 | 23,779 |
| 2038 | 2,184 | 190,994 | 23,443 |
| 2039.83 | 1,813 | 171,823 | 18,957 |
| | | total: | $830,075 |

## Loss of Companionship Services to Children

Mrs. Coskco's children also have suffered and will continue to suffer a loss of companionship services as a result of their mother's death. Regarding the quantity of such services, we make the following assumptions:

> a) twenty-five (25) hours per week with her children from decedent's actual date of death until the youngest child reaches age fourteen (14) on July 4, 2011;

> b) then, fifteen (15) hours per week with her children until the youngest reaches age eighteen (18) on July 4, 2015; and finally

> c) six (6) hours per month per child until decedent's statistical date of death.

The loss of companionship services begins with Mrs. Coskco's date of death and extends until her statistical date of death on October 1, 2040. Applying the hourly amounts shown above, losses to her children of the pecuniary value of the companionship services that would have been provided by Mrs. Coskco through the present time (end of January 2002) are derived as follows:

| Time Period | Annual Loss |
|---|---|
| 2000.25 | $  5,590 |
| 2001 | 22,828 |
| 2002.08 | 1,865 |
| total: | $30,283 |

Losses in future years are calculated beginning February 1, 2002, and extend through Mrs. Coskco's statistical date of death, a remaining time period of 38.69 years. As stated earlier, given the length of the time period of future loss, an assumed growth rate of 4.5% per annum is used to generate values in each subsequent year. Again, for the period in question, a reasonable discount rate is 6.0%. Thus, the present value of the future companionship services Mrs. Coskco would have provided to her children is derived in the table below.

| Time Period | Annual Hours of Services | Annual Value [@ 4.5%] | Present Value [@ 6.0%] |
|---|---|---|---|
| (1) | (2) | (3) | (4) |
| 2002.92 | 1,196 | $21,444 | $21,444 |
| 2003 | 1,300 | 24,358 | 22,979 |
| 2004 | 1,300 | 25,454 | 22,654 |
| 2005 | 1,300 | 26,599 | 22,333 |
| 2006 | 1,300 | 27,796 | 22,017 |
| 2007 | 1,300 | 29,047 | 21,706 |
| 2008 | 1,300 | 30,354 | 21,399 |
| 2009 | 1,300 | 31,720 | 21,096 |
| 2010 | 1,300 | 33,148 | 20,797 |
| 2011 | 1,040 | 27,712 | 16,402 |
| 2012 | 780 | 21,719 | 12,128 |
| 2013 | 780 | 22,696 | 11,956 |
| 2014 | 780 | 23,718 | 11,787 |
| 2015 | 426 | 13,536 | 6,346 |
| 2016 | 216 | 7,172 | 3,172 |
| 2017 | 216 | 7,495 | 3,127 |
| 2018 | 216 | 7,832 | 3,083 |
| 2019 | 216 | 8,185 | 3,040 |
| 2020 | 216 | 8,553 | 2,997 |
| 2021 | 216 | 8,938 | 2,954 |
| 2022 | 216 | 9,340 | 2,912 |
| 2023 | 216 | 9,761 | 2,871 |
| 2024 | 216 | 10,200 | 2,831 |
| 2025 | 216 | 10,659 | 2,790 |
| 2026 | 216 | 11,138 | 2,751 |
| 2027 | 216 | 11,640 | 2,712 |
| 2028 | 216 | 12,163 | 2,674 |
| 2029 | 216 | 12,711 | 2,636 |
| 2030 | 216 | 13,283 | 2,599 |
| 2031 | 216 | 13,881 | 2,562 |
| 2032 | 216 | 14,505 | 2,525 |
| 2033 | 216 | 15,158 | 2,490 |
| 2034 | 216 | 15,840 | 2,455 |
| 2035 | 216 | 16,553 | 2,420 |
| 2036 | 216 | 17,298 | 2,386 |
| 2037 | 216 | 18,076 | 2,352 |
| 2038 | 216 | 18,890 | 2,319 |
| 2039 | 216 | 49,897 | 5,778 |
| 2040.75 | 162 | 15,990 | 1,852 |
| | | total: | $323,479 |

## Loss of Advice and Counsel Services to Spouse

Another component of loss consists of the advice and counsel which Mrs. Coskco would have continued to provide to her husband. The basis for such a loss has been described by Chief Justice Robert Wilentz:

> ... it is the loss of that kind of guidance, advice and counsel which all of us need from time to time in particular situations, for specific purposes, perhaps as an aid in making a business decision, or a decision affecting our lives generally, or even advice and guidance needed to relieve us from unremitting depression. It must be the kind of advice, guidance or counsel that could be purchased from a business adviser, a therapist, or a trained counselor, for instance. That some of us obtain the same benefit without charge from spouses, friends or children does not strip it of pecuniary value. [SOURCE: Supreme Court of New Jersey, *Green v. Bittner*, 85 NJ 1 (1980), page 14.]

In the present matter, Mr. Coskco has experienced and will continue to experience a real loss of such advice and counsel. Again, the period of this loss component begins at the Mrs. Coskco's date of death and ends at her spouse's statistical date of death.

The pecuniary value of these services is estimated by considering the market value of those persons who offer advice and counsel such as social workers, financial managers and other such persons. The table on the following page identifies advice-related occupations and their related hourly earnings.

It should be noted that the occupations listed in the table do not include highly-compensated professionals such as psychiatrists, stock brokers, or lawyers. The reasons are that these occupations a) require a very high level of education and training that would not typically be a characteristic of average Americans, and b) provide highly specialized advice that would go beyond the type of advice and counsel that family members would typically provide to one another. [SOURCE: Frank D. Tinari, "Household Services: Toward a More Comprehensive Measure,"*Journal of Forensic Economics*, 11(3), 1998, p. 258.]

| Hourly Median Wages in New Jersey of Advice-Related Occupations, 1998* | |
| --- | --- |
| Occupation Title | Average Earnings |
| Social Workers, Except Medical and Psychiatric | $18.59 |
| Human Services Workers | $10.24 |
| Clergy | $18.30 |
| Residential Counselors | $9.99 |
| Loan Officers and Counselors | $20.94 |
| Tax Preparers | $15.39 |
| Business Teachers, Postsecondary^ | $32.80 |
| Financial Managers | $33.02 |
| Instructors and Coaches, Sports and Physical Training | $12.13 |
| Instructors, Nonvocational Education | $14.71 |
| Elementary School Teacher^ | $29.73 |
| Secondary School Teacher^ | $31.37 |

* Taken from U.S. Department of Labor, Bureau of Labor Statistics, *Occupational Employment Statistics,* 1998 State Occupational Employment and Wage Data, New Jersey, http://stats.bls.gov/oes/state/oes_nj.htm.

^Hourly wages adjusted to reflect 9.5-month work year

Averaging the above wage rates results in an hourly wage approximated at $20.60 for advice-related occupations, in 1998 dollars. Applying this same methodology to 1997 wage data for advice-related occupations yields an average wage rate of $20.25. Given the approximate two (2) percent growth rate exhibited between the 1997 and 1998 average wage data, and an average wage growth rate in all industries in recent years of approximately three (3) percent per annum, we apply a two (2) percent per annum growth rate to the previously established rates to obtain corresponding estimated average hourly earnings for advice-related occupations of $21.01 in 1999, $21.43 in 2000, $21.86 in 2001 and $22.30 in 2002.

However, our purpose is to estimate the replacement cost of such services. Individuals often find that to obtain these services on an hourly basis typically results in a much higher cost than the reported average wages of full-time employees. In December 1999, we

completed a survey of central New Jersey advice-related businesses to obtain the hourly
cost of such services.  Tutors indicated an average cost of $35-$55 per hour, family
counselors and social workers indicated an average cost of $40-$100 per hour.  We also
surveyed financial advisors; however, many we were not able to report a cost for services
because their fees are based on a wide variety of factors and are rarely quoted on an hourly
basis.  Of the those responding, the average hourly rate was approximately $100 per hour.
Given the results of this survey, we adjust the average wage rates upward by thirty (30)
percent to generate corresponding replacement cost figures as follows:

| Advice-Related Services | |
|---|---|
| Year | Replacement Wage Rate |
| 1997 | $26.35 |
| 1998 | 26.75 |
| 1999 | 27.30 |
| 2000 | 27.85 |
| 2001 | 28.42 |
| 2002 | 29.00 |

It is assumed, further, that the hours of advice and counsel most likely provided by Mrs.
Coskco to her husband would have averaged about one hour per week. Values for all future
years (post-2002) are generated by applying an assumed growth rate of 4.5% per annum.

The value for prior years' losses (through the end of January 2002) for advice and counsel
services is derived as follows:

| Time Period | Annual Loss |
|---|---|
| 2000.25 | $  362 |
| 2001 | 1,478 |
| 2002.77 | 1,161 |
| **total** | **$3,001** |

Losses in future years are calculated beginning February 1, 2002, and extend for a time
period of 37.75 years (to Mr. Coskco's statistical date of death on October 28, 2039).  As
stated above, an assumed growth rate of 4.5% per annum is used to generate values in each
subsequent year.  In addition, a discount rate of 6.0% is applied to obtain the present value
of future years' losses.  The value of future years losses for advice and counsel services to
Mr. Coskco is derived in the following table.

KLOCKO / Chasan Leyner Bariso & Lamparello                              page 17

| Time Period (1) | Annual Hours (2) | Annual Value of Services [@ 4.5%] (3) | Present Value [@ 6.0%] (4) |
|---|---|---|---|
| 2002.92 | 52 | $ 1,387 | $ 1,387 |
| 2003 | 52 | 1,576 | 1,487 |
| 2004 | 52 | 1,647 | 1,466 |
| 2005 | 52 | 1,721 | 1,445 |
| 2006 | 52 | 1,798 | 1,424 |
| 2007 | 52 | 1,879 | 1,404 |
| 2008 | 52 | 1,964 | 1,384 |
| 2009 | 52 | 2,052 | 1,365 |
| 2010 | 52 | 2,145 | 1,346 |
| 2011 | 52 | 2,241 | 1,326 |
| 2012 | 52 | 2,342 | 1,308 |
| 2013 | 52 | 2,447 | 1,289 |
| 2014 | 52 | 2,557 | 1,271 |
| 2015 | 52 | 2,672 | 1,253 |
| 2016 | 52 | 2,793 | 1,235 |
| 2017 | 52 | 2,918 | 1,218 |
| 2018 | 52 | 3,050 | 1,201 |
| 2019 | 52 | 3,187 | 1,184 |
| 2020 | 52 | 3,330 | 1,167 |
| 2021 | 52 | 3,480 | 1,150 |
| 2022 | 52 | 3,637 | 1,134 |
| 2023 | 52 | 3,801 | 1,118 |
| 2024 | 52 | 3,972 | 1,102 |
| 2025 | 52 | 4,150 | 1,087 |
| 2026 | 52 | 4,337 | 1,071 |
| 2027 | 52 | 4,532 | 1,056 |
| 2028 | 52 | 4,736 | 1,041 |
| 2029 | 52 | 4,949 | 1,026 |
| 2030 | 52 | 5,172 | 1,012 |
| 2031 | 52 | 5,405 | 997 |
| 2032 | 52 | 5,648 | 983 |
| 2033 | 52 | 5,902 | 969 |
| 2034 | 52 | 6,168 | 956 |
| 2035 | 52 | 6,445 | 942 |
| 2036 | 52 | 6,735 | 929 |
| 2037 | 52 | 7,038 | 916 |
| 2038 | 52 | 7,355 | 903 |
| 2039.77 | 40 | 6,122 | 678 |
| | | total: | $44,229 |

## Loss of Advice and Counsel Services to Children

Another component of loss consists of the advice and counsel which Mrs. Coskco would have continued to provide to her children. In the present matter, the Coskco children have experienced and will continue to experience a real loss of such advice and counsel.

The pecuniary value of these services is estimated by considering the market value of those persons who offer advice and counsel such as paid guidance counselors, social workers, and other such persons. The market wage rates and growth rates identified in the previous section are used again to establish the pecuniary value of these services.

Regarding the quantity of such services, we make the following assumptions:

a) two (2) hours per week per child from decedent's actual date of
   death until each child reaches age fourteen (14);
b) then, one (1) hour per week per child through age eighteen (18); and finally
c) one (1) hour per month per child until decedent's statistical date of death.

The loss of advice and counsel services begins on April 6, 2000, and extends until decedent's statistical date of death. The losses to the children of the pecuniary value of the advice and counsel services that would have been provided through the present time are given as follows:

| Time Period | Annual Hours of Service for Elizabeth | Annual Hours of Service for Lindsay | Annual Hours of Service for Zachary | Total Annual Hours | Annual Loss |
|---|---|---|---|---|---|
| 2000.25 | 26 | 26 | 26 | 78 | $ 2,172 |
| 2001 | 104 | 104 | 104 | 312 | 8,518 |
| 2002.08 | 8 | 8 | 8 | 24 | 655 |
|  |  |  |  | total: | $11,345 |

Losses in future years are calculated beginning February 1, 2002, and extend to Mrs. Coskco's statistical date of death, a remaining time period of 38.69 years. As stated earlier, an assumed growth rate of 4.5 % per annum is used to generate values in each subsequent year. Again, for the period in question, a reasonable discount rate is 6.0%. Based on the aforementioned assumptions, the present value of Mrs. Coskco's future advice and counsel services to her children is derived in the table on the following page.

| Time Period | Annual Hours of Service for Elizabeth | Annual Hours of Service for Lindsay | Annual Hours of Service for Zachary | Total Annual Hours | Annual Value [@ 4.5%] | Present Value [@ 6.0%] |
|---|---|---|---|---|---|---|
| (1) | (2) | (3) | (4) | (5) | (6) | (7) |
| 2002.92 | 96 | 96 | 96 | 287 | $8,324 | $8,324 |
| 2003 | 104 | 104 | 104 | 312 | 9,455 | 8,920 |
| 2004 | 104 | 104 | 104 | 312 | 9,881 | 8,794 |
| 2005 | 65 | 104 | 104 | 273 | 9,035 | 7,586 |
| 2006 | 52 | 78 | 104 | 234 | 8,092 | 6,410 |
| 2007 | 52 | 52 | 104 | 208 | 7,517 | 5,617 |
| 2008 | 52 | 52 | 104 | 208 | 7,855 | 5,538 |
| 2009 | 22 | 52 | 104 | 178 | 7,025 | 4,672 |
| 2010 | 12 | 52 | 104 | 168 | 6,928 | 4,347 |
| 2011 | 12 | 32 | 78 | 122 | 5,258 | 3,112 |
| 2012 | 12 | 12 | 52 | 76 | 3,423 | 1,911 |
| 2013 | 12 | 12 | 52 | 76 | 3,577 | 1,884 |
| 2014 | 12 | 12 | 52 | 76 | 3,738 | 1,858 |
| 2015 | 12 | 12 | 32 | 56 | 2,878 | 1,349 |
| 2016 | 12 | 12 | 12 | 36 | 1,933 | 855 |
| 2017 | 12 | 12 | 12 | 36 | 2,020 | 843 |
| 2018 | 12 | 12 | 12 | 36 | 2,111 | 831 |
| 2019 | 12 | 12 | 12 | 36 | 2,206 | 819 |
| 2020 | 12 | 12 | 12 | 36 | 2,306 | 808 |
| 2021 | 12 | 12 | 12 | 36 | 2,409 | 796 |
| 2022 | 12 | 12 | 12 | 36 | 2,518 | 785 |
| 2023 | 12 | 12 | 12 | 36 | 2,631 | 774 |
| 2024 | 12 | 12 | 12 | 36 | 2,750 | 763 |
| 2025 | 12 | 12 | 12 | 36 | 2,873 | 752 |
| 2026 | 12 | 12 | 12 | 36 | 3,003 | 742 |
| 2027 | 12 | 12 | 12 | 36 | 3,138 | 731 |
| 2028 | 12 | 12 | 12 | 36 | 3,279 | 721 |
| 2029 | 12 | 12 | 12 | 36 | 3,426 | 711 |
| 2030 | 12 | 12 | 12 | 36 | 3,581 | 700 |
| 2031 | 12 | 12 | 12 | 36 | 3,742 | 691 |
| 2032 | 12 | 12 | 12 | 36 | 3,910 | 681 |
| 2033 | 12 | 12 | 12 | 36 | 4,086 | 671 |
| 2034 | 12 | 12 | 12 | 36 | 4,270 | 662 |
| 2035 | 12 | 12 | 12 | 36 | 4,462 | 652 |
| 2036 | 12 | 12 | 12 | 36 | 4,663 | 643 |
| 2037 | 12 | 12 | 12 | 36 | 4,873 | 634 |
| 2038 | 12 | 12 | 12 | 36 | 5,092 | 625 |
| 2039 | 12 | 12 | 12 | 36 | 5,321 | 616 |
| 2040.75 | 9 | 9 | 9 | 27 | 3,991 | 462 |
|  |  |  |  |  | total: | $88,290 |

## Summary

We now combine the previously calculated losses in this case to arrive at a total loss value in present dollar amounts, as follows:

| Prior Years | Future Years | Total | Loss Component |
|---|---|---|---|
| $ 36,059 | $ 434,215 | $ 470,274 | household services |
| 30,730 | 830,075 | 860,805 | companionship services to spouse |
| 30,283 | 323,479 | 353,762 | companionship services to children |
| 3,001 | 44,229 | 47,230 | advice and counsel to spouse |
| 11,345 | 88,290 | 99,635 | advice and counsel to children |
| $ 111,418 | $ 1,720,287 | $ 1,831,705 | total present value of loss |

It is important to understand that the total loss figure is a present value, after-tax amount (in 2002 dollars), representing the lump-sum payment made at present needed to generate a flow of payments sufficient to compensate for the losses in each year of loss included in this appraisal. In addition, please note that pre-trial or pre-judgment interest has not been calculated. These interest losses are typically determined at the time of trial and would be in addition to the losses calculated in this appraisal report.

The preceding findings are based on information provided to date. They are subject to revision should additional information be forthcoming that would change any facts or assumptions upon which this analysis rests. We also note that economic damages are an approximation and are provided by the economic expert as a guide to the trier-of-fact. Because a loss stream cannot be computed with absolute confidence, a lump sum payment represents a "rough and ready" attempt to put the decedent's family in the same economic position had she not been injured and died. [SOURCE: *Jones & Laughlin Steel Corp. v. Pfiefer*, (1983), 103 S. Ct. at 2555.]